JEFFREY A. COHEN – SBN 149615
TORIN A. DORROS – SBN 191228 (Of Counsel)
NADINE ALSAADI – SBN 339899
**COHEN BUSINESS LAW GROUP**
*A Professional Corporation*
10990 Wilshire Blvd. Suite 1025
Los Angeles, California 90024-3928
Tel (310) 469-9600 • Fax (310) 469-9610

*Attorneys for* Plaintiff, *10PM CURFEW LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10PM CURFEW, LLC, a California Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> MAYUR DEEPAK PATIL; FUROR MEDIA, LLC, a Tennessee Limited Liability Company; CRUNCH MEDIA, LLC. a Tennessee Limited Liability Company; TRAVLY, INC a Bahamas Corporation, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br> **(1) USURPATION OF CORPORATE OPPORTUNITY** <br> **(2) BREACH OF FIDUCIARY DUTY** <br> **(3) BREACH OF CALIFORNIA'S UNFAIR COMPETITION LAW § 17200** <br> **(4) MISAPPROPRIATION OF TRADE SECRETS** <br> **(5) CONVERSION** <br> **(6) UNJUST ENRICHMENT** <br> **(7) FRAUD – CONCEALMENT** <br> **(8) FRAUDULENT MISREPRESENTATION** <br> **(9) VIOLATION OF CALIFORNIA PENAL CODE §496** <br><br> (DEMAND FOR TRIAL BY JURY) |

Plaintiff, 10PM CURFEW LLC, alleges as follows:

## **THE PARTIES**

1.      Plaintiff, at all times herein mentioned, was a limited liability company duly organized and existing under and by virtue of the laws of California, with its principal

place of business located in 1120 Commerce Drive STE.139 Atwater, CA 95301.

2.     Plaintiff is informed and believes and, on that basis, alleges that Defendant FURORMEDIA, LLC ("Furormedia") is, and at all times herein mentioned was, a limited liability company duly organized and existing under and by virtue of the laws of Tennessee, with its principal place of business located in Germantown, Tennessee.

3.     Plaintiff is informed and believes and, on that basis, alleges that Defendant CRUNCH MEDIA, LLC ("Crunch Media") is, and at all times herein mentioned was, a limited liability company duly organized and existing under and by virtue of the laws of Tennessee, with its principal place of business located in Germantown, Tennessee.

4.     Plaintiff is informed and believes and, on that basis, alleges that Defendant TRAVLY, INC. ("Travly") is, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the Bahamas' laws of with its principal place of business located in 39 Pheasant Ln Etobicoke, ON M9A 1T5, Canada.

5.     Plaintiff is informed and believes and, on that basis, alleges that Defendant MAYUR DEEPAK PATIL ("Patil") is, and at all times mentioned was, an individual residing in Seattle, Washington.

6.     When referring to "Defendants" herein, Plaintiff intends to include Defendants MAYUR DEEPAK PATIL, FURORMEDIA, LLC., TRAVLY, INC. and CRUNCH MEDIA, LLC.

## JURISDICTION AND VENUE

7.     Plaintiff is a terminated California entity formed under and by virtue of the laws of California on or about October 24, 2019 and voluntarily cancelled in good standing on or about December 22, 2022, formerly maintaining its principal place of business at 1120 Commerce Drive STE.139 Atwater, CA 95301 and prosecuting this action under Corporations Code §17354 et sec.

8.     FURORMEDIA, LLC, is the wholly owned personal entity of Defendant MAYUR DEEPAK PATIL and exists as a Tennessee Limited-Liability Company, filed

on or about January 28, 2020 and maintaining offices in Germantown, Tennessee while operating online worldwide, and nationwide, including but not limited to specific operations within California by advertising, marketing and directing its attention to and for California residents and offering its sole Member, Defendant Patil for employment with Plaintiff as Plaintiff's executive Director of Growth from on or about April 2021 to on or about March 2022 when he was terminated.

9.      CRUNCH MEDIA, LLC. is a wholly owned entity of Defendant MAYUR DEEPAK PATIL and existed as a Tennessee Limited-Liability Company, filed on or about October 4, 2021 and terminated on or about August 9, 2022. CRUNCH MEDIA, LLC. maintains an office in Germantown, Tennessee and has a foreign registration in Seattle, Washington, while operating online worldwide, and nationwide, including but not limited to specific operations within California by advertising, marketing and directing its attention to and for California residents.

10.      TRAVLY, INC. is an entity controlled by Defendant MAYUR DEEPAK PATIL and exists as a Corporation under Bahamas laws. Travly operates online worldwide, and nationwide, including but not limited to specific operations within California by advertising, marketing and directing its attention to and for California residents.

11.      MAYUR DEEPAK PATIL, is an individual residing in Seattle Washington and operating his wholly owned company Furormedia, LLC while serving as Plaintiff's executive Director of Growth from April 2021 to March 2022 when he was terminated.

12.      Defendants, and each of them, purposefully availed themselves to the benefits of California law by publishing content through www.Furormedia.com, @travel, @vacation, @destination, @resorts, and Beauty ASMR in a manner that directly and specifically targets and reaches audience in California.

13.      Defendants FURORMEDIA, LLC, CRUNCH MEDIA, LLC, and TRAVLY operate www.Furormedia.com, and the following social media channels on the Snapchat® internet platform @travel, @vacation, @destination, @resorts and Beauty ASMR, each

of which is a separate marketing channel intended to reach Snapchat's audience. Snapchat is an undeniably popular social media app operated by Snap, Inc., with over 200 million millennials and Gen Z users opening the app every single day.[1]

14.    Snap, Inc. a corporation with its principal place of business in California at 3000 31st Street, Santa Monica, California 90405.

15.    Defendants' @travel, @vacation @destination, and @resorts channels are social media publications reaching and targeting audience in the state of California. Defendants through these channels and others on Instagram pages, i.e. "Resorts", have published several advertisements promoting the products and services of California businesses, to target markets including individuals within the State of California.

16.    Plaintiff is informed, believes and thereon alleges that Defendants, and each of them, have sufficient contacts with this district generally and, in particular, with the events herein alleged, that they are subject to the exercise of jurisdiction of this Court.

17.    Therefore, pursuant to Federal Code of Civil Procedure 28 U.S.C. § 1391, this Court has jurisdiction over Defendants because (a) a substantial part of the events or omissions occurred in Los Angeles, California; and (b) Defendants have sufficient minimum contacts with the State of California so far as to render exercise of jurisdiction over Defendants consistent with traditional notions of fair play and substantial justice.

18.    Furthermore, this Court has subject matter jurisdiction over the matters alleged in this Complaint as the amount in controversy exceeds $75,000.00.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

19.    Plaintiff, 10PM Curfew, LLC ("Curfew" or "Company"), was founded in 2019 as one of the fastest growing female lifestyle, beauty, and fashion networks on the Internet with a social media reach of over 2 Billion views monthly. Curfew's business

---

[1] https://blog.hubspot.com/marketing/how-to-get-on-snapchat-discover

COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

involves the production or re-distribution of video content to viewers on all major social media platforms such as Snapchat, Instagram, and TikTok.

20.   Since its formation in 2019, Curfew, based upon its good will and reputation in the industry, has formed several high level and exclusive business relationships with several social media platforms such as Snapchat, and Instagram. These relationships between Curfew and various individuals at these platforms are the protected, proprietary and trade secret information of Curfew and are protected as such ("Trade Secret Information").

21.   Due to Curfew's proprietary process and diligence, Curfew became one of only approximately 50 publishing partners on Snapchat to be approved to self-publish channels on these platforms and have maintained these relationships since July 2021.

22.   Curfew's channels on Snapchat consist of a collection of beauty related content targeting females of all ages ("Target Audience").

23.   Over time, Curfew continued to implement different strategies to appeal to launch channels and reach its target audience and publish desirable content that keeps viewers engaged and expands Curfew's visibility to millions of viewers across its partner social media platforms.

24.   From 2019 through 2022, as Curfew grew, it expanded its trusted relationships with these partners gaining more and more privileges with the platforms based upon its good name, reputation and trade secret relationships prior to retaining Defendant Patil as Executive Director of Growth at Curfew.

25.   Defendant Patil was hired by Curfew in or about April 2021. At that time, he had limited knowledge of the industry and little if any name recognition, reputation, or trade secret relationships in the industry.

26.   In or about April 2021 Patil was hired to assist with the curating of third-party content according Curfew's proprietary strategy and vision. Patil worked alongside Curfew's senior officers, at their direction, and reported directly to them.

27.   Patil's work with Curfew exposed Patil to Curfew's Trade Secret

Information, proprietary processes, and deal terms with Curfew's contacts at Snap, Inc., Instagram, and TikTok.

**Snapchat**

28.    Snapchat is a popular video-sharing app operated by Snap Inc. – a technology company. Snapchat's main source of revenue is advertisement sales. Snapchat users post their content in the form of photos or videos and Snapchat places ads around such content and/or posts.

29.    One of Snapchat's publishing features is a category of publishers that are approved in advance to publish new channels with limited or no advance approval by Snapchat. These pre-approved publishers are an exclusive group of companies with direct and exclusive communications avenues to Snapchat content developers, not available to the general public.

30.    At all relevant times herein, Curfew had been approved as a Beauty and Lifestyle publishing partner and was effectively in the business of developing and submitting Beauty and Lifestyle channels to Snapchat for final approval and publication.

31.    Snapchat has only a small number of publishing partners under any category with the total number of approved publishing partners being said to be in the range of about fifty, worldwide to date.

32.    Publishing partners have channels that are subscribed to/accessed by Snapchat users.

33.    On or about July 2021, Curfew became a Snapchat publishing partner and had a number of channels on the Snapchat Platform with exclusive access to submit channels for publication. Patil had no such access and had no relationships with Snapchat outside of those made available to him by virtue of his position with Curfew.

**Patil Hired as Company Executive**

34.    Patil served as Director of Growth (aka Head of Growth) at Curfew and was responsible for the curation, submission, and publishing of Snapchat channel content according to the overall policies and practices of Curfew and the instructions of senior

1   executives.

2   35.    Patil, himself, admits that he held an executive role by holding himself out

3   publicly as the "Head of Growth at 10PM Curfew" on his personal website

4   www.mayurdpatil.com, on his personal social media accounts, and in published articles

5   written or commissioned by him, in order to earn himself a status, reputation and visibility

6   in the social media industry. Only now in the fact of the present claims against him has he

7   begun to deny this role and delete and destroy evidence establishing his actual role.

8   36.    In his capacity as Director of Growth, Patil held a senior level management

9   role responsible for the development of new marketing channels utilizing Curfew's

10  relationships with core business partners, communicating, arranging, and assessing

11  existing and new business relationships as ongoing business opportunities of Curfew.

12  37.    As Director of Growth, Patil was granted access to certain Trade Secret

13  Information which is granted only to Curfew's trusted senior directors as required.

14  38.    Patil managed other employees and served at and among other executives at

15  the highest levels of the Company.  In all respects Patil worked as a senior member of the

16  executive management team and was continually, at all times relevant herein, involved in

17  and aware of Curfew's sensitive business plans, marketing plans, finances and other

18  confidential information including the Trade Secret Information as a trusted member of

19  the executive team.

20  39.    Patil's Growth team created, *inter alia*, logos and pilot programs as part of

21  his responsibilities in order to prepare and submit new "pilot" channel episodes to

22  Snapchat according to Company direction within Company oversight.

23  40.    At all times relevant herein, Patil owed Plaintiffs a fiduciary duty.

24  **Patil Goes Rogue**

25  41.    On or about July 31, 2021, a Curfew executive instructed Patil to establish a

26  new Snapchat channel, focusing upon a relatively innovative and trendy concept known

27  as ASMR within the Beauty and Lifestyle marketplace to be known as "Beauty ASMR".

28  42.    Beauty ASMR, as proposed by Curfew, was a Snapchat channel within the

COHEN
BUSINESS LAW GROUP
*A Professional Corporation*
*•Los Angeles•*

Beauty and Lifestyle vertical featuring an ongoing series of short beauty related videos containing "ASMR" (autonomous sensory meridian response) stimuli within each episode which the viewers seek out in order to experience a sensory sensation related to beauty products and services, typically along the lines of sounds such as unwrapping a new product or the stiffness of a brush or quality of a product packaging by tapping the box on the table or tapping it with finger nails.

43.    The Beauty ASMR channel was a unique and distinct business opportunity of Curfew which Patil only learned about as the result of his trusted position with Curfew.

44.    Channels in development, such as Beauty ASMR, and others are only disclosed to certain highly trusted individuals within the Company. Patil was one of the few senior executives at Curfew that had access to this information and access to Curfew's contacts at Snapchat.

45.    In or about July 2021 Patil knowingly and fraudulently represented and stated to Curfew, after he was instructed to do so, that he would submit the Beauty ASMR channel to Snapchat for approval and publication under the Curfew Beauty and Lifestyle umbrella.

46.    Curfew and its executives relied on Patil, as Director of Growth, with regard to the preparation and submission of the material required to have Beauty ASMR channel approved and published on Snapchat.

47.    As Head of Growth, Patil sought the assistance of another employee of Curfew to create the branding of the new Beauty ASMR channel by creating a logo and the initial pilot episode for the channel, except that unlike prior assignments from Patil, this time Patil ordered the branding employee to surreptitiously and without Curfew's knowledge or consent, send the Beauty ASMR branding materials exclusively to Patil and not share them with Curfew or Curfew's executives, and the employee did so.

48.    In or about the same time period, Patil then knowingly and fraudulently represented Curfew's executives that he had submitted the Channel authorization request, including the branding, logo, channel name and pilot episode to Snapchat and that

COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

Snapchat had for some reason rejected the Beauty ASMR channel and proposal.

49.     Only later, in or about October 2021, Curfew executives discovered that a show with the name Beauty ASMR was featured on Snapchat using identical media, logo and branding as was created by the Curfew employee. Curfew executives learned that this competing show was in fact operated by Defendants without the knowledge or consent of Curfew.

50.     While working as an executive with Curfew, being paid by Curfew and collecting Curfew's proprietary processes, Trade Secret Information, Patil surreptitiously, fraudulently and unlawfully, and in violation of his fiduciary obligations to Curfew, submitted Beauty ASMR to Snapchat personally for his own personal use and profit through his wholly owned personal limited liability companies, not for Curfew's benefit using Curfew's contacts and resources without the knowledge or consent of Curfew.

51.     Patil furthermore, falsely and fraudulently held himself out as being authorized by Curfew or that he was Curfew, when he submitted his identical and confusingly similar, copy of the Curfew Beauty ASMR under his own name for his own personal benefit which Patil marketed and profited from for his own personal gain, use and benefit all while utilizing the name, reputation, contacts and resources including the Trade Secret Information of Curfew when he submitted this and other channels, all of which constitute the opportunity and property of Curfew and the natural expansion thereof.

52.     Patil provided false and fraudulent information to the platforms leading the platforms to believe that Defendants were in some way authorized, related to or were in fact dealing with Curfew such that Snapchat accepted the Beauty ASMR and other proposals from Defendants as having the same rights and privileges enjoyed by Curfew.

53.     The first rogue Beauty ASMR episode was published on August 30, 2021 on Snapchat featuring content, curated by Curfew – all under Defendants' accounts using pseudonyms and other fake and hidden names.

**Patil is Fired for Non-Performance**

54.     Still unaware of Patil's unlawful theft of trade secrets and fraudulent actions,

Curfew eventually began to question Patil's productivity and eventually did so to such an extent that it was made clear that his position with the company was in jeopardy. Patil continued to assure Curfew with numerous false and fraudulent promises that he would improve, such promises were intended to, and in fact kept, Curfew paying his salary. Patil's employment with Curfew was finally terminated in or about March 2022.

55.     Only later, in or about January 2023 did Curfew eventually discover that it was the Defendants herein responsible for the mystery competitor apparently able to somehow read the minds of Curfew executives, taking their ideas, Trade Secret Information, business opportunities, profits and assets of Curfew.

**Damages – Defendants Amass Enormous Assets, Profits and Internet Properties**

56.     On information and belief, after investigation, Plaintiff herein believes that Defendants Patil, Furormedia, Travly, Crunch Media and his new companies and partners have amassed internet channels, properties and other assets that have been valued by third parties in the range of $40 Million dollars – all of which on the backs of the reputation, property and trade secrets of Plaintiff.   Defendants regularly flaunt their proceeds generated from the stolen assets, trade secrets and business opportunities online.

## FIRST CAUSE OF ACTION
## USURPATION OF CORPORATE OPPORTUNITIES
### (Against Defendant Mayur Patil)

57.     Plaintiff incorporates by reference and realleges all prior paragraphs of the Complaint, herein, as though set forth herein at length.

58.     At all times mentioned herein, Defendant Patil, was an executive and Director of Growth at Curfew, Defendant Patil was an agent and fiduciary of Plaintiff and owed duty of loyalty, care, and good faith and fair dealing to the conduct of Curfew's affairs, including a duty to act in the highest standard of good faith and fair dealing towards Plaintiff, and to refrain from obtaining any advantage over Plaintiff by the slightest misrepresentation, concealment, threat or adverse pressure of any kind. Defendant Patil

breached his fiduciary duties when Defendants submitted the Beauty ASMR channel that was created using Curfew's resources to Snapchat under Defendants' name and/or other entities under Patil's control.

59.    As a Director of Growth Patil was exposed to Curfew's business opportunities such as Beauty ASMR and was privy to Curfew's internal Snapchat strategy surrounding its beauty first verticals since he was responsible for implementing the opportunities for Curfew.

60.    The Beauty ASMR and other usurped business opportunities taken by Defendants were squarely within the business areas of Plaintiff, namely Beauty and Lifestyle social media and Plaintiff had the knowledge, ability and capacity to fully exploit all such opportunities.

61.    Indeed, Patil exploited the business opportunities of Curfew, exactly as he was instructed, but unbeknownst to Plaintiffs, Patil did so under his own name and for his own benefit without any authority, consent or knowledge sought from or granted by Plaintiff, all in direct competition with Plaintiff.

62.    Patil neither requested nor were ever granted consent to take the business opportunities for Defendants' own use.

63.    Defendants failed to disclose their exploitation and usurpation of the business opportunities to Plaintiff and took advantage of opportunities such as Snapchat channels for their own personal gain and profit.

64.    Other business opportunities presented themselves to Defendant at or about the time of the usurpation of Plaintiff's business opportunities, which Plaintiff also failed to seek or obtain consent to take for himself.

65.    Defendant's actions are a substantial factor in Plaintiff's damages, including but not limited to monetary damages.

66.    Plaintiff has been damaged by Defendant's Usurpation of Corporate Opportunities in an exact amount to be proven at trial but in excess of the jurisdictional minimum of this court applicable to diversity actions.


COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

67.   Defendant Patil's conduct towards Plaintiff while working for Plaintiff and at times thereafter, while owing fiduciary duties to Plaintiff was outrageous, with his acts being done with malice or bad motives or reckless indifference to the interests of Plaintiff.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Against Defendant Mayur Patil)

68.   Plaintiff incorporates by reference and realleges all prior paragraphs of the Complaint, herein, as though set forth herein at length.

69.   At all times mentioned herein, Defendant Patil, was an executive and Director of Growth at Curfew, Defendant Patil was an agent and fiduciary of Plaintiff and owed duty of loyalty, care, and good faith and fair dealing to the conduct of Curfew's affairs, including a duty to act in the highest standard of good faith and fair dealing towards Plaintiff, and to refrain from obtaining any advantage over Plaintiff by the slightest misrepresentation, concealment, threat or adverse pressure of any kind. Defendant Patil breached his fiduciary duties when Defendants submitted the Beauty ASMR channel that was created using Curfew's resources to Snapchat under Defendants' name and/or other entities under Patil's control.

70.   Patil owes a fiduciary duty to Plaintiff, as Patil was a Director of Growth of Curfew and held himself publicly as "Head of Growth at 10PM Curfew." Patil owed a duty of care, duty of loyalty, duty of good faith, and duty of disclosure amongst other duties, to Plaintiff.

71.   Patil knowingly or recklessly breached his fiduciary duties of loyalty, candor and good faith by failing to disclosure material information to Plaintiff. Patil knowingly and fraudulently misrepresented material facts as alleged in Paragraphs 46-48 of this Complaint.

72.   Defendant Patil breached his fiduciary duties of loyalty, care and good faith by, among other conduct, knowingly acting against the interest of Curfew, usurping Plaintiff's

COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

business opportunities and submitting Beauty ASMR to Snapchat under entities owned or controlled by Defendants. Patil engaged in competing business practices with Plaintiff while working with Plaintiff on or about July 2021.

73.   Defendant's actions are a substantial factor in Plaintiff's damages, including but not limited to monetary damages.

74.   Plaintiff has been damaged by Patil's breach of his fiduciary duties in an exact amount to be proven at trial but in excess of the jurisdictional minimum of this court applicable to diversity actions.

75.   Defendant Patil's conduct towards Plaintiff while working for Plaintiff and at times thereafter, while owing fiduciary duties to Plaintiff was outrageous, with his acts being done with malice or bad motives or reckless indifference to the interests of Plaintiff.

### THIRD CAUSE OF ACTION
### BREACH OF CALIFORNIA'S UNFAIR COMPETITION LAW § 17200
### UNFAIR AND UNLAWFUL COMPETITION
### (Against All Defendants)

76.   Plaintiff incorporates by reference and realleges all prior paragraphs of the Complaint, herein, as though set forth herein at length.

77.   Defendants engaged in actionable and unlawful business acts. Patil, knowingly and fraudulently misled Plaintiff in order to divert Plaintiff's business opportunities such as Beauty ASMR channel to Defendants.

78.   Defendant Patil, as Director of Growth, unlawfully and unfairly used Plaintiff's Trade Secret Information and resources to submit Plaintiff's materials such as Beauty ASMR pilot for Defendants own benefit.

79.   Defendant Patil, knowingly, fraudulently and unlawfully misrepresented to Plaintiff material information such that Snapchat has rejected the Beauty ASMR channel proposed by Curfew. Plaintiff, similar to any other reasonable person relied on Patil's representation. At the time, Patil was Director of Growth at Curfew and was trusted by

1  Curfew.

2  80.    Defendant Patil made the material misrepresentations in order to deceive Plaintiff

3  and in an effort to divert the business opportunity along with its profits to Defendants sole

4  benefit. Defendant Patil misrepresentation refrained Plaintiff from realizing any of Beauty

5  ASMR profits which Plaintiff is solely entitled to.

6  81.    Defendants' unfair and unlawful actions are a substantial factor in Plaintiff's

7  damages, including but not limited to monetary damages.

8  82.    Plaintiff has been damaged by Defendants' engagement in unfair competitive

9  business practices in an exact amount to be proven at trial but in excess of the jurisdictional

10  minimum of this court applicable to diversity actions.

11

12  **FOURTH CAUSE OF ACTION**

13  **MISAPPROPRIATION OF TRADE SECRETS**

14  **(Against Defendant Mayur Patil)**

15  83.    Plaintiff incorporates by reference and realleges all prior paragraphs of the

16  Complaint, herein, as though set forth herein at length.

17  84.    Plaintiff is the sole possessor of Curfew's Trade Secret Information and Curfew's

18  proprietary processes. Plaintiff took reasonable measures to protect Plaintiff's trade

19  secrets.

20  85.    Defendant Patil, as Director of Growth of Plaintiff, was trusted with Plaintiff's trade

21  secret and Trade Secret Information. Such Trade Secret Information was not disclosed by

22  Plaintiff to other Curfew employees/individuals.

23  86.    Further, Defendant Patil knew that the Trade Secret Information were highly

24  confidential, and that Defendant was required to only use such proprietary processes for

25  the sole benefit of Curfew.

26  87.    Defendant Patil acquired his awareness of the trade secret through his exposure to

27  Curfew's executives and Curfew's repeated assertions that Trade Secret Information are

28  trade secrets not to be disclosed or used.

88.   Plaintiff did not authorize or supply Defendants with either implied or express consent for Defendants to use or disclose Plaintiff's Trade Secret Information and processes.

89.   However, Defendants used Plaintiff's trade secrets for Defendants' own benefit without Plaintiff's consent to gain a competitive business advantage over Plaintiff. Indeed, Defendants used Plaintiff's trade secrets to directly compete with Plaintiff in the same market, targeting the same Beauty and Lifestyle viewers.

90.   As a Director of Growth of Curfew, and through Patil's constant interactions, including but not limited to, meetings with Curfew's executives as alleged in Paragraphs 25-27 and 37-38 of this Complaint, Patil has a duty to limit the use of Curfew's trade secrets and maintain their secrecy.

91.   Defendant Patil's conduct constitutes malicious misappropriation of Plaintiff's trade secrets. As a foreseeable and consequential result of Defendants' use of Plaintiff's trade secrets, Plaintiff has suffered damages according to proof at trial, including but not limited to the loss of business, time, energy, and costs incurred in pursuing the case, and attorney's fees and costs.

92.   Defendant's actions are a substantial factor in Plaintiff's damages, including but not limited to monetary damages.

93.   Plaintiff has been damaged by Patil's misappropriation of Plaintiff's trade secrets in an exact amount to be proven at trial but in excess of the jurisdictional minimum of this court applicable to diversity actions.

## FIFTH CAUSE OF ACTION
## CONVERSION
### (Against All Defendants)

94.   Plaintiff incorporates by reference and realleges all prior paragraphs of the Complaint, herein, as though set forth herein at length.

95.   Plaintiff has, at all relevant times, owned and had control over Curfew's social

COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

media channels and the Snapchat show Beauty ASMR until Patil submitted Beauty ASMR to Snapchat under Defendants' name and/or other entities under Patil's control and intentionally and knowingly misrepresented to Plaintiff Beauty ASMR's status as alleged in paragraphs 42-49 of this Complaint.

96.   Defendants substantially interfered with Plaintiff's access and control of Beauty ASMR by knowingly and intentionally submitting Curfew's property – Beauty ASMR – to Snapchat under Defendants' name and/or other entities under Patil's control. Defendants' act interfered with Plaintiff's business opportunities and misappropriated the benefits from Beauty ASMR channel, including but not limited to monetary profits, to Furormedia.

97.   Further, Plaintiff is unable to use its own Beauty ASMR channel in any social media platform due to Defendants conversion of Plaintiff's Beauty ASMR asset.

98.   Plaintiff or Plaintiff's executives did not ever consent to Defendants misappropriation of Beauty ASMR and/or Curfew's Trade Secret Information.

99.   As a foreseeable and consequential result of Defendants' interference with Plaintiff's rights, Plaintiff has suffered damages according to proof at trial, including but not limited to the loss of business, time, energy, and costs incurred in pursuing the case, and attorney's fees and costs.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT
## (Against All Defendants)

100.   Plaintiff incorporates by reference and realleges all prior paragraphs of the Complaint, herein, as though set forth herein at length.

101.   Plaintiff has, at all relevant times, not given consent to any of the Defendants to use Curfew's Trade Secret Information and Beauty ASMR channel. In clear violation of Patil's fiduciary duties and Defendants violation of applicable laws such as conversion, misappropriation of trade secrets, fiduciary duty and unfair competition, Defendants



COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

1  realized profits, monetary and otherwise, that belong to Plaintiff.

2  102.    Plaintiff through its personnel, created the Snapchat channel Beauty ASMR with

3  the intention and explicit direction to Patil to submit Beauty ASMR pilot for Snapchat

4  approval.

5  103.    Defendants, knowingly and intentionally, deceived Plaintiff by making intentional

6  misrepresentations to Plaintiff that Snapchat rejected the Beauty ASMR pilot.

7  104.    Defendants submitted Beauty ASMR to Snapchat under Defendants' name and/or

8  other entities under Patil's control, without Plaintiff's knowledge, and Beauty ASMR

9  channel was accepted by Snapchat under an entity owned and/or controlled by Defendants.

10  105.    Defendants are not entitled to any of the direct and consequential profits that

11  Defendants acquired due to Beauty ASMR channel.

12  106.    Defendants are not entitled to any of the direct and consequential profits that

13  Defendants acquired due to Defendants' use of Plaintiff's Trade Secret Information.

14  107.    Defendant's actions are a substantial factor in Plaintiff's damages, including but not

15  limited to monetary damages.

16  108.    Plaintiff has been damaged by Patil's misappropriation of Plaintiff's trade secrets

17  in an exact amount to be proven at trial but in excess of the jurisdictional minimum of this

18  court applicable to diversity actions.

19

20              **SEVENTH CAUSE OF ACTION**

21                 **FRAUD - CONCEALMENT**

22                  **(Against Mayur Patil)**

23  109.    Plaintiff incorporates by reference and realleges all prior paragraphs of the

24  Complaint, herein, as though set forth herein at length.

25  110.    Defendant Patil concealed or suppressed a material fact from Plaintiff when Patil

26  failed to disclose to Plaintiff that Patil submitted Plaintiff's product – Beauty ASMR

27  channel – to Snapchat under an entity controlled by Patil and not that of Plaintiff.

28

111.   Defendant Patil, as Director of Growth of Curfew, was under a duty to disclose the material fact that Curfew did not submit Beauty ASMR pilot for Snapchat approval. Patil was the person responsible for submitting Snapchat channel pilots for Snapchat approval. Such submissions were part of Patil's duties and obligations at Curfew.

112.   Defendant Patil intentionally and knowingly concealed the fact that Patil submitted Beauty ASMR pilot under owned and/or controlled by Patil with the intent to defraud Curfew. Patil concealed the material facts so Patil earns profits from Beauty ASMR channel rather than Curfew.

113.   Further, Patil instructed Curfew's employee to not share Beauty ASMR logo and pilot with Curfew executives, as alleged in paragraphs 46-48 of this Complaint in an effort to suppress the facts.

114.   Plaintiff was reasonably unaware of the fact that Defendant Patil submitted Beauty ASMR pilot to Snapchat under an entity owned/controlled by Patil on or around July 2021 because Patil was the Director of Growth of Curfew and a trusted executive of Curfew's team with access to Trade Secret Information.

115.   Had Plaintiff known that Defendant Patil had concealed the fact that Curfew did not submit Beauty ASMR pilot to Snapchat, Plaintiff would have submitted Beauty ASMR channel to Snapchat through their contacts and obtained all of Beauty ASMR profits. Plaintiff could have also estopped Defendants from obtaining any Beauty ASMR related profits starting on or about August 2021.

116.   Defendant Patil's willful and wanton conduct is a foreseeable and consequential result of Plaintiff's damages according to proof at trial, including but not limited to the loss of business, time, energy, and costs incurred in pursuing the case, and attorney's fees and costs.

117.   Defendant's actions are a substantial factor in Plaintiff's damages, including but not limited to monetary damages.

118.   Plaintiff has been damaged by Patil's concealment of material facts from Plaintiff in an exact amount to be proven at trial but in excess of the jurisdictional minimum of this


COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

1    court applicable to diversity actions.

### EIGHTH CAUSE OF ACTION
### FRAUD – FRAUDULENT MISREPRESENTATION
### (Against Mayur Patil)

119.   Plaintiff incorporates by reference and realleges all prior paragraphs of the Complaint, herein, as though set forth herein at length.

120.   Defendant Patil made a false material representation to Curfew that Beauty ASMR pilot was submitted by Curfew for Snapchat approval as alleged in paragraphs 46-47, 49 in this Complaint.

121.   Defendant Patil knowingly and fraudulently stated to Curfew that Beauty ASMR pilot was submitted for Snapchat's approval by Curfew and that Snapchat rejected Beauty ASMR.

122.   At the time Patil made the misrepresentation of the material fact to Curfew, Patil had submitted Beauty ASMR pilot to Snapchat under an entity owned/controlled by Patil, and the pilot was accepted by Snapchat.

123.   Defendant Patil, as Director of Growth, intended to induce Plaintiff to rely on his material fact representations in order to keep Plaintiff from knowing that Patil has deceived Plaintiff, used Curfew resources and Trade Secret Information to submit Beauty ASMR pilot under Furormedia for Patil's own benefit.

124.   Plaintiff relied on Defendant Patil's misrepresentation and did not pursue Beauty ASMR channel further.

125.   Defendant Patil's willful and wanton conduct is a foreseeable and consequential result of Plaintiff's damages according to proof at trial, including but not limited to the loss of business, time, energy, and costs incurred in pursuing the case, and attorney's fees and costs.

126.   Defendant's actions are a substantial factor in Plaintiff's damages, including but not limited to monetary damages.

COHEN
BUSINESS LAW GROUP
A Professional Corporation
•Los Angeles•

1   127.   Plaintiff has been damaged by Patil's fraudulent misrepresentations of material facts

2   from Plaintiff in an exact amount to be proven at trial but in excess of the jurisdictional

3   minimum of this court applicable to diversity actions.

4

5   ### NINETH CAUSE OF ACTION

6   ### FOR VIOLATION OF CALIFORNIA PENAL CODE §496

7   ### (Against All Defendants)

8   128.   The Defendants and each of them, in taking the business opportunity, Trade Secrets,

9   business concepts, marketing plans and channels from Plaintiff, thereby received, sold and

10  aided in selling and concealing and withheld from its owner property that had been stolen

11  in violation of California Penal Code §496.

12  129.   When Defendants, and each of them, received, sold and aided in selling and

13  concealing, and withheld the property from Defendants the above-described property, they

14  knew that the property had been stolen.

15  130.   At all times relevant herein, Defendants had actual knowledge that they were in

16  possession of the stolen property.

17  131.   Defendants' actions are a substantial factor in Plaintiff's damages, including but not

18  limited to monetary damages.

19  132.   Plaintiff has been damaged by Defendants actions in an exact amount to be proven

20  at trial but in excess of the jurisdictional minimum of this court applicable to diversity

21  actions and pursuant to §496(c).

22  133.   Plaintiff is entitled to and hereby claims treble damages based upon the actual

23  amount of damages proven at trial together with costs of suit, and reasonable attorney's

24  fees.

25  //

26  //

27  //

28

COHEN
BUSINESS LAW GROUP
*A Professional Corporation*
*•Los Angeles•*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. Injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from using trade secrets and business opportunities of 10 PM Curfew.

2. Restitution;

3. Injunctive Relief according to proof;

4. Constructive trust over the revenue earned by Defendants by or in connection with the business opportunities, including all social media channels of Defendants;

5. Monetary Damages according to proof;

6. An award of pre-judgment interest, attorney fees, costs and post-judgment interest in favor of Plaintiff and against Defendants; and

7. Exemplary or punitive damages in an amount according to proof at trial;

8. Such other and further legal and equitable relief as the Court shall find just and proper.

**REQUEST FOR TRIAL BY JURY**

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: April 14, 2023

**COHEN BUSINESS LAW GROUP**
*A Professional Corporation*

By: /s/ Jeffrey A. Cohen
**JEFFREY A. COHEN**
**TORIN A. DORROS**
**NADINE ALSAADI**
*Attorneys for Plaintiff,*
10PM CURFEW LLC

COHEN
BUSINESS LAW GROUP
*A Professional Corporation*
*•Los Angeles•*

Complaint

21