

Cory A. Baskin (SBN 240517)
cb@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel: 818.296.9508

*Attorneys for Defendants*
Mayur Deepak Patil, Furor Media LLC,
Crunch Media, LLC, & Travly, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10PM CURFEW, LLC, a California Limited Liability Company,<br><br>    Plaintiff,<br><br>  v.<br><br>MAYUR DEEPAK PATIL; FUROR MEDIA, LLC, a Tennessee Limited Liability Company; CRUNCH MEDIA, LLC, a Tennessee Limited Liability Company; TRAVLY, INC, a Bahamas Corporation<br><br>    Defendants. | Case No. 23-cv-02805-MEMF-MRW<br><br>*Assigned to the Hon. Maame Ewusi-Mensah Frimpong*<br><br>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY, OR IN THE ALTERNATIVE TRANSFER, OR IN THE ALTERNATIVE DISMISS COMPLAINT<br><br><u>Hearing</u><br>Date: August 24, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 8B (*Request for Zoom hearing anticipated to be filed by moving party)<br><br>Complaint Filed:  April 14, 2023<br>Trial Date:  None Set |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION.................................................................................................1

II.   PERTINENT FACTS .........................................................................................3

    A. The Indiana Action .....................................................................................3

    B. 10PM's Complaint in this Action ...............................................................4

III.  THIS CASE SHOULD BE STAYED UNDER THE FIRST-TO-FILE
     RULE ...............................................................................................................7

    A. Legal Standard: The First-to-File Rule......................................................7

    B. The First-to-File Rule Dictates that this Case Should Be Stayed or
       Transferred Unless or Until the Indiana Action is Dismissed........................8

IV.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
     STATE ANY VIABLE CLAIM AGAINST DEFENDANTS...........................12

    A. Legal Standard: Motions to Dismiss Under Fed R. Civ. P. 12(b)(6) .............12

    B. The Complaint Should Be Dismissed in its Entirety Under Rule
       12(b)(6) .........................................................................................13

       1.  The misappropriation of trade secrets claim fails to state a cause of
          action under CUTSA .............................................................................13

       2.  The remainder of the claims are preempted under CUTSA or the
          Copyright Act .........................................................................................18

       3.  The Complaint fails to state any claims against the entity
          Defendants .............................................................................................21

    C.  Leave to Amend Should Be Denied ...........................................................22

V.    CONCLUSION................................................................................................23

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011) ...................................................... 17

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ................................................... 7, 11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................... 12, 13, 16

*Beaulieu Grp., LLC v. Bates*,
  EDCV151090JGBKKX, 2016 WL 7626471 (C.D. Cal. Oct. 18, 2016) ........... 14, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................... 12, 13, 16

*Branch v. Tunnel*,
  14 F.3d 449 (9th Cir. 1994) .................................................. 13

*Cedars-Sinai Med. Ctr. v. Shalala*,
  125 F.3d 765 (9th Cir. 1997) ................................................. 7

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
  611 F.2d 738 (9th Cir. 1979) ................................................. 7

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ................................................. 19

*Farhang v. Indian Institute of Tech., Kharagpur*,
  2010 WL 2228936 (N.D. Cal. June 1, 2010) ................................. 15

*Fred Hall Shows, Inc. v. Hall*,
  SACV21417JVSKESX, 2021 WL 3473562 (C.D. Cal. July 28, 2021) . 15, 16, 19, 22

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
  179 F.R.D. 264 (C.D. Cal. 1998) ............................................. 7

iii

MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,

    896 F.2d 1542 (9th Cir. 1990) ................................................................ 12

*Imax Corp. v. Cinema Techs., Inc.*,

    152 F.3d 1161 (9th Cir. 1998) ................................................................ 15

*In re Century Aluminum Co. Sec. Litig.*,

    729 F.3d 1104 (9th Cir. 2013) ................................................................ 13

*Inherent.com v. Martindale-Hubbell*,

    420 F.Supp.2d 1093 (N.D. Cal. 2006) ...................................................... 9

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*,

    171 Cal.App.4th 939 (2009) .................................................................. 18

*Kearns v. Ford Motor Co.*,

    567 F.3d 1120 (9th Cir. 2009) ................................................................ 13

*Key Equip. Fin. v. Fed. Express Corp.*,

    CV 14-7534-GW(AGRX), 2014 WL 12966963 (C.D. Cal. Dec. 18, 2014) ..... passim

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,

    787 F.3d 1237 (9th Cir. 2015) .................................................................. 9

*LIVN Worldwide Ltd. v. Vubiquity Inc.*,

    2:21-CV-09589-AB-KS, 2022 WL 18278580 (C.D. Cal. July 22, 2022) ............... 20

*Mattel, Inc. v. MGA Entm't, Inc.*,

    782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................... 14, 18

*McCormick v. Sony Pictures Entertainment*,

    2008 WL 11336160 (C.D. Cal. 2008) ...................................................... 20

*McKell v. Washington Mutual, Inc.*,

    142 Cal.App.4th 1457 (2006) ................................................................ 16

*Melchior v. New Line Productions, Inc.*,

    106 Cal.App.4th 779 (2003) .................................................................. 15

*Microvention, Inc. v. Balt USA, LLC*,

    820CV02400JLSKES, 2023 WL 4316880 (C.D. Cal. May 3, 2023) ...................... 18

4

witkow | baskin

*Morongo Band of Mission Indians v. Rose*,

   893 F.2d 1074 (9th Cir. 1990)......................................................................22

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,

   678 F.2d 93 (9th Cir. 1982)...................................................................7, 11

*Polich v. Burlington Northern, Inc.*,

   942 F.2d 1467 (9th Cir. 1991)....................................................................22

*Robertson v. Dean Witter Reynolds, Inc.*,

   749 F.2d 530 (9th Cir.1984).......................................................................12

*Silvaco Data Systems v. Intel Corp.*,

   184 Cal.App.4th 210 (2010).......................................................................18

*Swartz v. KPMG LLP*,

   476 F.3d 756 (9th Cir. 2007)................................................................21, 22

*Talece Inc. v. Zheng Zhang*,

   2020 WL 6205241 (N.D. Cal. Oct. 22, 2020).........................................13

*Vess v. Ciba-Geigy Corp. USA*,

   317 F.3d 1097 (9th Cir. 2003).....................................................................13

*Ward v. Follett Corp.*,

   158 F.R.D. 645 (N.D. Cal. 1994) ..................................................................7

**STATUTES**

17 U.S.C. § 301.............................................................................................19

28 U.S.C § 1404(a) .......................................................................................11

Cal. Civ. Code § 3426, *et seq.* ..................................................2, 16, 18, 19

**RULES**

Fed R. Civ. P. 15(a) ......................................................................................22

Fed. R. Civ. P. 12(b)(6) ................................................................................12

Fed. R. Civ. P. 8.............................................................................................16

Fed. R. Civ. P. 9(b) .......................................................................................13

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

## I.    INTRODUCTION

This lawsuit is a tell-tale example of a company being outperformed by its competitors and crying foul, with the added wrinkle of improper forum shopping thrown in for good (or bad) measure. After providing services for Plaintiff 10PM Curfew, LLC ("Plaintiff or "10PM" or "Curfew"), Defendant Mayur Patil ("Patil") decided to start his own social media company in order to release content in the female beauty space. Patil took an enormous risk starting his own venture in this already well-known and saturated social media market, but using his own work product, his own relationships he built from scratch, and his own capital, Patil achieved a level of success in a niche space—Beauty-related ASMR content[1]—that 10PM thought was a poor financial investment. Of course, now, on the backdrop of Patil's hard-earned success, 10PM launched a campaign of threats and intimidation against Patil and his companies, alleging among other things, nebulous and vague claims of trade secret misappropriation and demanding the entire net worth of Patil's business in damages.

Rather than take these threats lying down, Patil called 10PM's bluff by filing suit against 10PM in the Northern District of Indiana, where 10PM first recruited him to perform services (the "Indiana Action").[2] *Two months later*, 10PM filed this copycat action, alleging claims that it could have—and should have—alleged as counterclaims in the Indiana Action.

Because the two cases involve the same (or substantially the same) parties, nucleus of facts, and subject matter, this Court should stay all proceedings in this California action under the well-established "first-to-file" rule until the Indiana Action is determined or, alternatively, transfer this matter to the Northern District of Indiana so that it may be heard concurrently with the Indiana Action. If, however, the Court

---

[1] "ASMR" stands for autonomous sensory meridian response.

[2] The Indiana Action, filed on February 13, 2023, is captioned *Mayur Deepak Patil and FurorMedia, LLC v. 10PM Curfew, LLC*, N.D. Ind. Case No. 4:23-cv-00016-JPK.

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

declines to stay or transfer this matter under the first-to-file rule, it should nevertheless dismiss the Complaint because it fails to state any cognizable claims against Defendants. In other words, and in any respect, this case should not proceed against Defendants in this Court.

The gravamen of each and every claim alleged in the Complaint appears to be 10PM's assertion that Patil—either individually, or in concert with co-defendants Furor Media LLC ("Furor"), Crunch Media, LLC ("Crunch"), and Travly, Inc. ("Travly") (collectively, "Defendants")—misappropriated 10PM's trade secret-level relationships at Snapchat, Instagram, and/or TikTok to "steal" 10PM's allegedly proprietary idea for a social media channel featuring ASMR-related content. Even if this theory were cognizable—which, for reasons discussed hereinbelow, it is not—the instant Complaint fails to satisfy the applicable pleading standards under California's Uniform Trade Secret Act, Cal. Civ. Code § 3426, *et seq.* ("CUTSA") and/or federal procedural law by failing to plausibly plead any legitimate factual basis for its claims against Defendants.

First, it is impossible for Defendants to determine the nature and scope of the trade secrets allegedly at issue because the Complaint, like 10PM's predecessor demand letters triggering the Indiana Action, is fatally (and seemingly intentionally) vague. For examples, it is unclear if 10PM is alleging that its "business relationships" with "various individuals" at social media platforms such as Snapchat are trade secrets despite the apparent absence of anything unique or confidential about these relationships. In a similar vein, it is unclear if 10PM alleging that the Beauty ASMR video/content which 10PM does not own and which was created by social media influencers not employed by 10PM is nevertheless also somehow proprietary to 10PM.

Second, to the extent 10PM's claims are based on Defendants' alleged unauthorized use of 10PM's trade secrets or proprietary information, they (i) are preempted by CUTSA; and (ii) fail for lack of specificity because, among other things, 10PM does not even identify the names of the particular individuals at Snapchat or Instagram whose relationships were allegedly misappropriated. Similarly, to the extent

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

10PM's claims are based upon the defendants' unauthorized use of content allegedly created by or for 10PM, they (i) must be deemed preempted by the Copyright Act; and (ii) fail because 10PM has not alleged—and cannot allege—that it owns the copyright to any of the content.

Finally, even if the Complaint could be deemed to contain sufficiently specific allegations to ground the claims asserted against Patil, the third, fifth, sixth, and ninth claims should still be dismissed as alleged against Furor, Travly, and Crunch because the Complaint is utterly devoid of any specifics regarding these defendants' supposed misconduct.

Thus, by any measure, in the event this case is not stayed pending the determination of the first-filed Indiana Action, the Complaint, and each and every claim alleged therein, should be dismissed for failure to state a claim.

## II.    PERTINENT FACTS

### A.    The Indiana Action[3]

Beginning on or about January 20, 2023, 10PM commenced a campaign of threats and harassment against Patil through increasingly dire and bombastic letters conclusorily asserting that Patil had engaged in usurpation of corporate opportunities, misappropriation of trade secrets, theft of intellectual property, conversion, unjust enrichment, and a litany of other claims including violations of the Digital Millennium Copyright Act ("DMCA") and Racketeer Influenced and Corrupt Organization ("RICO") Act. *See generally*, RJN, Ex. 1 (Indiana Complaint, Exhibits 1-3 (10PM Letters)).

Because Patil was knowingly engaged by 10PM as an independent contractor through his own company (Furor) while he was a student at Purdue University in West Lafayette, Indiana, Patil retained Indiana-based counsel, Anthony E. Dowell ("Dowell"), to respond to 10PM's demands. *See id.* (Indiana Complaint, ¶ 14). On

---

[3] The Complaint in the Indiana Action is attached as Exhibit 1 to Defendants' Request for Judicial Notice ("RJN") submitted concurrently herewith.

February 13, 2023, after Dowell's extensive efforts at informal resolution through correspondence were rebuffed, Patil and Furor, through Dowell, filed the Indiana Action seeking a declaratory judgment that they did not misappropriate any of 10PM's trade secrets or business opportunities or violate any cognizable rights of 10PM. *See generally*, *id.*

The Indiana Action has already substantially progressed—multiple motions have already been fully briefed; the initial scheduling conference has been completed; and substantial discovery has been served. *See* RJN, Ex. 2 (PACER Docket in Indiana Action). In particular, briefing has been closed since May 26, 2023 with respect to 10PM's amended motion to dismiss the Indiana Action for lack of personal jurisdiction and the parties are currently awaiting the court's resolution of that motion. *See id.* RJN, Ex. 3 (Motion to Dismiss, ECF No. 22), Ex. 4 (Opp. to Motion to Dismiss, ECF No. 32), & Ex. 5 (Reply re: Motion to Dismiss, (ECF No. 35).[4]

**B.    10PM's Complaint in this Action**

On April 14, 2023, more than *two months after* Patil and Furor filed the Indiana Action, 10PM filed a Complaint in this District commencing the instant action. Curiously, 10PM's Complaint makes no reference to the Indiana Action. 10PM also failed to file a Notice of Pendency of Other Action contemporaneously with its Complaint to notify this Court, as required under Central District Local Rule 83-1.4, that the Indiana Action was already pending involving substantially the same parties and subject matter.[5]

---

[4] Pursuant to the N.D. Ind. Local Rules, the Court will likely issue it ruling on the motion on the papers without oral argument.

[5] After waiting 10 days in case 10PM's failure to promptly notify the Court of the earlier-filed Indiana Action was an inadvertent oversight, as opposed to an intentional omission, Defendants specially appeared in this action on April 24, 2023 to submit their own Notice of Pendency of Other Action. *See* ECF No. 12.

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

In its Complaint,[6] 10PM describes itself as "one of the fastest growing female lifestyle, beauty, and fashion networks on the Internet with a social media reach of over 2 Billion views monthly." ¶ 19. 10PM states that its business "involves the production or re-distribution of video content to viewers on all major social media platforms such as Snapchat, Instagram, and TikTok" and "based upon its good will and reputation in the industry, [it] has formed several high level and exclusive business relationships with [these] social media platforms[.]" ¶¶ 19-20. 10PM asserts that these "relationships are the protected, proprietary and trade secret information of Curfew and are protected as such ('Trade Secret Information')." ¶19-20. 10PM admits, however, that at least 50 other publishing partners have similar "relationships" with Snapchat. ¶¶ 21, 31.

10PM alleges that "[i]n or about April 2021, Patil was hired to assist with the curating of third party content according [sic] Curfew's proprietary strategy and vision." ¶ 26.[7] According to 10PM, "Patil's work with Curfew exposed Patil to Curfew's Trade Secret Information, proprietary processes, and deal terms with Curfew's contacts at Snap, Inc., Instagram, and TikTok." ¶ 27. As such, Patil was "involved in and aware of Curfew's sensitive business plans, marketing plans, finances and other confidential information including the Trade Secret Information as a trusted member of the executive team." ¶ 38. Specifically, "Patil's Growth team created, inter alia, logos and pilot programs as part of his responsibilities in order to prepare and submit new 'pilot'

---

[6] Unless otherwise indicated, all further citations in this section commencing with "¶" refer to 10PM's Complaint in this case.

[7] 10PM admits that it "employed" Patil through Furor, a Tennessee limited liability company with offices in Germantown, Tennessee. ¶ 8.[7] In his Complaint in the Indiana Action Patil explains that, while retained by 10PM Curfew and with the full knowledge of 10PM Curfew, Patil and Furor were independent contractors who openly performed other work and pursued other opportunities in social media. RJN, Ex. 1 (Indiana Complaint, ¶ 17). 10PM did not provide Patil or Furor with any written agreement governing their relationship, defining who owned content created by Patil and Furor, or requiring that any information, ideas, material, ideas, contacts or channels of commerce be kept confidential. *Id.* (Indiana Complaint, ¶¶ 19-21).

channel episodes to Snapchat according to Company direction within Company oversight." ¶ 39.

10PM alleges that, "[o]n or about July 31, 2021, a Curfew executive instructed Patil to establish a new Snapchat channel, focusing upon ASMR within the Beauty and Lifestyle marketplace to be known as 'Beauty ASMR.'" ¶ 41. According to 10PM, "[t]he Beauty ASMR channel was a unique and distinct business opportunity of Curfew which Patil only learned about as the result of his trusted position with Curfew." ¶ 43. 10PM alleges, however, that "Patil then knowingly and fraudulently represented Curfew's executives that he had submitted the Channel authorization request, including the branding, logo, channel name and pilot episode to Snapchat and that Snapchat had for some reason rejected the Beauty ASMR channel and proposal." ¶ 48. Instead, "Patil surreptitiously, fraudulently and unlawfully, and in violation of his fiduciary obligations to Curfew, submitted Beauty ASMR to Snapchat personally for his own personal use and profit through his wholly owned personal limited liability companies, not for Curfew's benefit using Curfew's contacts and resources without the knowledge or consent of Curfew." ¶ 50. 10PM does not identify the specific Snapchat representative(s) allegedly contacted by Patil or why the ability to contact said representative(s) is supposedly proprietary to 10PM. *Id.*

Based upon the aforementioned allegations, 10PM asserts nine separate claims in the Complaint for: (1) usurpation of corporate opportunity; (2) breach of fiduciary duty; (3) breach of California's Unfair Competition Law; (4) misappropriation of trade secrets; (5) conversion; (6) unjust enrichment; (7) fraud-concealment; (8) fraudulent misrepresentation; and (9) violation of California Penal Code § 496. 10PM asserts four of these claims—the third, fifth, sixth, and ninth—jointly and severally against all Defendants and the remainder exclusively against Patil. Through this suit, 10PM seeks to disgorge all of Defendants' profits earned over ***all*** of their social media channels and business opportunities, regardless of their connection, if any, to Beauty ASMR. *See generally*, ¶ 56 and Prayer for Relief.

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

## III.    THIS CASE SHOULD BE STAYED UNDER THE FIRST-TO-FILE RULE

### A. <u>Legal Standard: The First-to-File Rule</u>

"'The first-to-file rule is a "doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Key Equip. Fin. v. Fed. Express Corp.*, No. CV 14-7534-GW(AGRX), 2014 WL 12966963, at *2 (C.D. Cal. Dec. 18, 2014) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982). "Under that rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)). "The rule's purpose, described as 'of paramount importance,' is to 'avoid placing an unnecessary burden on the federal judiciary, [as well as] the embarrassment of conflicting judgments.'" *Id.* (quoting *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611F.2d 738, 750 (9th Cir. 1979)).

Courts look to three threshold requirements in determining whether to apply the first-to-file rule: (1) chronology of the actions, (2) similarity of the parties, and (3) similarity of the issues. *Id.* (citing *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) and *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994))). "Where these requirements favor the party invoking the first-to-file rule, a court will typically adhere to the rule absent an equitable exception." *Id.* (citing *Alltrade*, 946 F.2d at 625, 628). "'The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping.'" *Id.* (quoting *Alltrade*, 946 F.2d at 628 (citations omitted)). "[A]t the end of the day, the rule serves important systematic functions, and thus 'should not be disregarded lightly.'" *Id.* (quoting *Alltrade*, 946 F.2d at 625 (citations omitted)).

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

**B. <u>The First-to-File Rule Dictates that this Case Should Be Stayed or Transferred Unless or Until the Indiana Action is Dismissed</u>**

This District's holding in *Key, supra,* mandates that the first-to-file rule be applied to stay the instant case. In *Key*, plaintiff Key Equipment Finance ("Key") acquired the beneficial interest in a lease taken out by Federal Express ("FedEx") for a cargo plane. *Key*, 2014 WL 1296696, at *1. In the months leading up to the return date for the plane, Key asserted that FedEx attempted to conceal records and barred it from inspecting the plane until the eve of the return date. When Key was finally able to inspect the plane, it discovered that FedEx had damaged or removed valuable pieces of equipment. *Id.* at *2. On September 5, 2014, Key's lawyers sent FedEx a two-page letter stating that Key had retained counsel regarding the dispute, but expressing a hope that the parties "[would] be able to resolve [their] issues amicably." *Id.* On September 9, 2014, FedEx's in-house lawyers sent a response letter refuting the legitimacy of Key's allegations. The following day, September 10, Key responded with a letter, asserting, among other things, that it was reserving all rights under the lease, including its right to exercise its legal remedies. *Id.* The following day (September 11), FedEx filed suit in the Western District of Tennessee, asserting a single claim for declaratory relief. On September 26, 2014, Key filed its own suit for damages and injunctive relief. *Id.* Shortly thereafter, Key moved the Tennessee court to dismiss FedEx's complaint—in essence, Key's motion asked the Tennessee court to decline jurisdiction over FedEx's declaratory-judgment claim under Rule 12(b)(6). While awaiting the Tennessee Court's ruling on Key's motion to dismiss, FedEx filed a motion to stay, transfer, or dismiss Key's second-filed Central District of California action under the first-to-file rule. *Id.* at *1-2.

After first reciting the Ninth Circuit standards regarding the first-to-file rule (copied virtually verbatim hereinabove), Central District Judge George H. Wu applied the rule to stay the second-filed action in his Court. As a preliminary matter, Judge Wu held that he, not the Tennessee court, should decide the first-to-file issue. *Id.* at *5 Judge

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

Wu explained that, "barring the unusual scenario where a party asks the first court to enjoin litigation in the second-filed action, . . . this Court is the proper forum for addressing first-to-file questions, not the Tennessee court." *Id.* (citing *Cedars-Sinai*, *supra*, 125 F.3d at 769).

Because there was no dispute as to the similarity of the parties or similarity of the issues,[8] Judge Wu next focused on Key's assertion that the anticipatory-suit or forum-shopping exception mandated a deviation from the first-to-file rule's absention doctrine. *Id.* Judge Wu explained that "'[t]he anticipatory suit exception is rooted in a concern that a plaintiff should not be deprived of its traditional choice of forum because a defendant with notice of an impending suit first files a declaratory relief action over the same issue in another forum.'" *Id.* (quoting *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D. Cal. 2006). Judge Wu thus cautioned:

> [A] suit is not anticipatory merely because "the defendant in the first action ... contemplated litigation" or made "veiled threats of legal action" before the plaintiff brought suit, or "simply because [the plaintiff] anticipate[d] litigation and sue[d] first[.]" [¶] . . . [F]ar and away, the most important consideration is whether the plaintiff in the first suit jumped ahead once the defendant indicated an intent to sue and set a reasonably firm deadline for pre-filing resolution.

*Id* at *5-6.* Applying this authority, Judge Wu found the anticipatory suit inapplicable. *Id.* at *7.* Judge Wu explained, Key's letters "provided no specific timeframe indicating

---

[8] The Ninth Circuit has clearly indicated that neither the parties nor the issues need to be "identical" between the first and second-filed cases; all that is required is substantial similarity. *See e.g.*, *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239-41 (9th Cir. 2015) (affirming stay of C.D. Cal action in deference to first-filed Mississippi interpleader case even though a defendant in the Mississippi action was not named in the C.D. Cal. action and finding "substantial overlap" of the issues in the two cases). Here too, the substantial overlap between the parties—only Crunch and Travly—tangential parties at best—are not named in the Indiana Action—and the issues—Patil and Furor seek a declaration of non-liability in the Indiana Action based upon the same facts and evidence that will determine the claims alleged by 10PM in this action, which 10PM could (and should) easily reallege (to the extent they are not dismissed for failure to state a claim) in the Indiana Action.

9

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

that a suit was imminent," which was "confirmed by the fact that Key did not file suit until more than two weeks after its last letter" indicating that Key was not "truly on the verge of filing suit." Moreover, Key did not point to any misleading conduct on FedEx's behalf causing Key to delay filing and the courts in either jurisdiction would be required to apply the same law regardless of venue. *Id.* Judge Wu also dispensed with Key's argument that a "'declaratory judgment action is a red flag'" (based on authority from other judicial districts expressing concern over first-filed declaratory judgment actions) and instead reiterated that the "prevailing test – 'specific, concrete indications that a suit by the defendant was imminent' – makes sense, rather than rote reliance on generalities about declaratory judgment actions. *Id.* (citations omitted).

The procedural facts and circumstances militating in favor of application of the first-to-file rule to stay the instant case are even stronger here than in *Key*. First, as in *Key*, there was no imminent intention by 10PM to file a lawsuit. In fact, 10PM waited more than ***two months*** after Patil and Furor filed the Indiana Action to file suit in this District. In *Key*, Judge Wu found that a far shorter delay—***two weeks***—belied Key's assertion that he was imminently preparing to file suit in ***this jurisdiction***. Indeed, 10PM's counsel expressly admits as much in his correspondence, explaining "our letter of January 20, 2023 was ***not intended to serve as a demand letter***" and that "[w]e merely wished to place your client on notice of the nature of the claims that are being asserted so as to assist with the obligation to preserve the relevant evidence was imminent." RJN, Ex. 1 (Indiana Complaint, Exhibits (10PM Letters) (emphasis added)); *see also*, Baskin Decl., Ex. 2 (June 20, 2023 letter) (10PM's counsel reiterating that his prior letters were "records preservation" letters which merely served to "outline" 10PM's claims.) Second, 10PM's counsel did not impose any pre-filing deadline for a resolution in any of his letters to Patil. Similarly, nowhere in these letters did 10PM's counsel ever state ***where*** 10PM intended to sue Defendants if litigation were to be commenced. In this regard, it was by no means clear that this District (or, for that matter, anywhere in California) would be 10PM's preferred venue. This is because, contrary to

10

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

10PM's allegation that it is a California limited liability company, its judicially-noticeable business records on file with the California Secretary of State confirm that 10PM was dissolved as a California entity in December 2022 and that its principals are currently based in the tax haven of Panama![9] *See* RJN, Exs. 6 & 7 (Cal. Sec. of State Records).

Here then, as in *Key*, the only remaining question for this Court should be whether to merely stay this case or transfer it the Northern District of Indiana pursuant to 28 U.S.C § 1404(a). Although Defendants believe that the issuance of an order to transfer this action is well-within this Court's discretion, especially considering that 10PM has not filed any motion in the Indiana Action to transfer that case to this District, per *Key*, it would appear the more prudent course is for this Court to instead table the transfer issue in favor of a stay. *See Key*, *supra*, 2014 WL 12966963, at *8 (quoting *Alltrade*, *supra*, 946 F.2d at 629 ("W]here the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed")); *see also*, *Pacesetter*, *supra*, 678 F.2d at 96 ("[N]ormally, the forum non conveniens argument should be addressed to the court in the first-filed action."). If the Indiana Court grants 10PM's currently pending motion to dismiss—which Defendants believe to be unlikely—then the stay in this case could be lifted and this action proceed apace. If, however, the Indiana Court denies the motion to dismiss, then this Court could: (a) transfer this action to Indiana; or (b) maintain the stay and await 10PM's filing of a proper motion to transfer in the Indiana Action for adjudication in that court; or (c) lift the stay to rule on

---

[9] 10PM's allegation regarding its California citizenship appears to have been made in bad faith and quite possibly in violation of its counsel's duty of candor to the Court, if not Fed. Civ. R. 11. This is especially so if the allegation was designed to mislead this Court—or the court in the N.D. Indiana Action, about its present ties to California for purposes of the stay/transfer inquiry. In this same vein, it is also worth repeating that 10PM failed to file a notice of pending action advising this Court of the first-filed Indiana Action as required under Central District Local Rule 83-1.4. Judge Wu also pointedly observed that Key similarly failed to file such a notice in his Order staying that action. *Key*, *supra*, 2014 WL 12966963, at *1, fn. 9.

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

Defendants' instant motion to dismiss on the merits. *Accord*, *Alltrade*, *supra*, 946 F.2d at 629 ("Should the Florida court dismiss the appeal and transfer what remains of the first-filed action, 'the stay could be lifted and the actions consolidated.' [Citation omitted.] Of course, should the Florida court decide that it has jurisdiction to hear Uniweld's appeal of the Board's decision, 'the stay could be lifted and the second-filed action dismissed or transferred.' [*Id.*]").

In connection with the Court's consideration of option (c)—either after or in lieu of staying this case under the first-to-file rule—Defendants submit that 10PM's Complaint in this action, and every claim alleged therein, should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The remainder of this Motion will focus on this dismissal analysis and argument.

## IV. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE ANY VIABLE CLAIM AGAINST DEFENDANTS

### A. Legal Standard: Motions to Dismiss Under Fed R. Civ. P. 12(b)(6)

Dismissal is proper when a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept factual allegations as true, it need not accept labels, a mere list of elements, or a "legal conclusion couched as a factual allegation." *Id.* Dismissal is warranted where the complaint lacks a cognizable legal theory or where it presents such a theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, a court may consider material submitted as part of the complaint and matters which may be properly judicially noticed without converting the motion to dismiss into a motion for summary judgment. *Id.*;

*Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

When both parties have advanced "possible explanations," where only one is true and "only one of which results in liability," a plaintiff must offer allegations that are more than "merely consistent" with their advanced explanation. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678) Instead, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true in order to render plaintiffs' allegations plausible within the meaning of [*Iqbal*] and [*Twombly*]." *Id.* (internal citations omitted) (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 554).

Moreover, when a Complaint alleges claims based upon fraud, Fed. R. Civ. P. 9(b) requires that the party alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) may apply when claims include "averments of fraud," even if the word "fraud" is not used. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-06 (9th Cir. 2003). For example, where a breach of fiduciary duty claim is based on facts that rely on fraudulent behavior, such a claim is subject to the heightened pleading standards of Rule 9(b). *See e.g.*, *Talece Inc. v. Zheng Zhang*, 2020 WL 6205241, at *4 (N.D. Cal. Oct. 22, 2020). Rule 9(b) requires that "circumstances constituting the alleged fraud" should be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Allegations of fraud that do not satisfy that standard must be "disregarded" or "stripped" from the claim. *Id.*

## B. The Complaint Should Be Dismissed in its Entirety Under Rule 12(b)(6)

### 1. The misappropriation of trade secrets claim fails to state a cause of action under CUTSA

As a preliminary, but nevertheless dispositive matter, 10PM's Complaint fails to specify whether its trade secret-related claims—and, as discussed more fully in subpart 2 below, ***all nine*** claims in the Complaint are based upon the same trade secret-centric

13

allegations—arise under federal or state law. However, since the Complaint does ***not*** allege federal question as a basis for subject matter jurisdiction—it only references diversity (*see* ¶ 18)—10PM's trade secret claims would appear to arise exclusively under state law as opposed to any federal statute such as the Defend Trade Secrets Act ("DTSA"). This begs the further question—which state's law to apply? This inquiry is further complicated by the fact that 10PM appears to have dissolved its California entity in order to conduct its business extraterritorially from the decidedly "less-taxing" forum of Panama. *See again*, RJN, Exs. 6 & 7. Nevertheless, given 10PM's ostensible former status as a California limited liability company during and through the dates Patil allegedly performed services for 10PM and was exposed to its purported trade secrets and proprietary information, Defendants shall presume, for purposes of the instant Motion in this Court, that 10PM is seeking to enforce ***California*** trade secret law in connection with its claims in this action. 10PM's failure to specifically allege the basis for its trade secret claims alone should subject the Complaint to dismissal. But even if this fatal flaw is excused, the Complaint should—and indeed must—still be dismissed because it fails to state any cognizable claim under CUTSA.

CUTSA defines a trade secret as "information, including a formula, pattern, compilation, pro-gram, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). "'Information derives independent economic value from not being generally known when its secrecy provides a business with a substantial business advantage.'" *Beaulieu Grp., LLC v. Bates*, No. EDCV151090JGBKKX, 2016 WL 7626471, at *11 (C.D. Cal. Oct. 18, 2016) (quoting *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011) (internal quotation marks omitted). "A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist.'"

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

*Id.* (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998)). The plaintiff "should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *Ibid.* (emphasis in original) (citations omitted). "For example, 'a vague claim that a former employee misappropriated "business models and implementations" is insufficient to describe a trade secret with particularity.'" *Id.* (citing *Farhang v. Indian Institute of Tech., Kharagpur*, 2010 WL 2228936, at *14 (N.D. Cal. June 1, 2010).

Recent case law from this District featuring circumstances highly analogous to those at bar dictates that Plaintiff's trade secret claims must be dismissed under CUTSA. Judge James V. Selna's decision in *Fred Hall Shows, Inc. v. Hall*, No. SACV21417JVSKESX, 2021 WL 3473562, at *1 (C.D. Cal. July 28, 2021), is a prime example and directly on point.

In *Fred Hall*, Plaintiff Fred Hall Shows—a business engaged in putting on annual boat shows and promoting related recreational equipment in southern California— alleged that Defendants (from whom Plaintiff had purchased the rights to and assets of the shows) conspired to misappropriate Plaintiff's competitive information, including customer and pricing information and other trade secrets such as pricing information with vendors, exhibitors, and others. *Id.* In total, Plaintiff alleged 30 separate causes of action against Defendants (including, as particularly pertinent to the instant case, claims for violation of CUTSA, violation of the DTSA, common law misappropriation, breach of fiduciary duty, conversion, unfair competition, unjust enrichment,[10] and imposition of constructive trust). *Id.* at *2.

---

[10] Judge Selna dismissed the unjust enrichment claim without leave to amend because California does not recognize unjust enrichment as a stand-alone cause of action. *See Fred Hall*, *supra*, 2021 WL 3473562, at *8; *accord Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment"); *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1490

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

Defendants, led by Chad Woods ("Woods"), moved to dismiss the Complaint's various trade secret claims on the grounds that that the trade secrets were not sufficiently described. *Id.* at *8. Woods argued, and Judge Selna agreed, that "none of the alleged trade secrets are, in fact, trade secrets." *Id.* Judge Selna thus dismissed the trade secret claims, explaining and finding that that Plaintiff "had not alleged anything unique or secret about its pricing structure or its customers' prices, and has generally failed to discloses the claimed trade secrets with the requisite degree of particularity for a cause of action under [CUTSA]." *Id.*

Here, as in *Fred Hall*, either by design or carelessness, 10PM fails to clearly identify the trade secrets in its Complaint in a fashion sufficient to even satisfy Rule 8's notice pleading standard (as set forth in *Iqbal* & *Twombly*), let alone CUTSA's specific pleading requirements and/or Rule 9(b)'s heightened pleading standards, which would otherwise be applied in lieu of the CUTSA standard since all of Plaintiff's claims are grounded on fraud, misuse of trade secret or proprietary information, or both.

So what are 10PM's supposed trade secrets? Early in the Complaint, 10PM narrowly identifies its "Trade Secret Information" as only its "exclusive business relationships with several social media platforms such as Snapchat, and Instagram." Complaint, ¶ 20. A few breaths later, however, 10PM inadvertently acknowledges that this information cannot possibly meet CUTSA's standard to be considered a trade secret because these same relationships are shared among at least 50 other Snapchat publishing partners. ¶ 21. Defendants are entitled to at least know the name(s) of these supposedly proprietary contacts to evaluate the manner in which they acquired these contacts, whether or not they ever used these contacts (and, if so, to what extent), and/or whether—as almost certainly is the case—this contact information is generally

---

(2006) (sustaining demurrer to cause of action for unjust enrichment on ground that "[t]here is no cause of action for unjust enrichment"). Thus, at the very least, 10PM's sixth claim for unjust enrichment in the Complaint in this case should also be dismissed without leave to amend.

16

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

available to similarly situated competitors in the industry.

But 10PM does not limit its allegations of misuse/misappropriation in the Complaint to just the relationships it defines as "Trade Secret Information." 10PM variously invokes, among other things, its "proprietary process and diligence" (¶ 21), "proprietary strategy and vision" (¶ 26), "proprietary processes, and deal terms" (¶ 27), and "proprietary processes" again and again (¶¶ 50, 84 & 86 ). Tellingly and fatally, 10PM never explains, even cursorily, what these supposed "proprietary" processes, diligence, and deal terms entail or how or why they are in fact unique to 10PM as compared to other similarly situated companies. *See Agency Solutions.Com, LLC v. TriZetto Grp., Inc*., 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) ("First, the plaintiff must clearly identify what the 'thing' is that is alleged to be a trade secret, and second, the plaintiff must be able to clearly articulate why that 'thing' belongs in the legal category of trade secret.") Indeed, one would presume that Snapchat's terms offered to 10PM are the same or similar as those offered to its competitors and, if anything, are Snapchat's proprietary information, not 10PM's.

The Complaint further asserts that the "Beauty ASMR channel was a unique and distinct business opportunity of Curfew which Patil only learned about as the result of his trusted position with Curfew." ¶ 43. While 10PM does not use the buzzwords "trade secret" or "proprietary," it nevertheless clearly seeks to imbue Beauty ASMR with tantamount status via the terms "unique" and "distinct." And Patil's supposedly intentional and fraudulent usurpation of the business opportunity presented by this "unique and distinct" Beauty ASMR channel is the "res" that grounds all nine of the Complaint's claims.[11] Indeed, even the fourth claim which ostensibly invokes only Patil's misappropriation of 10PM's "relationships" is itself based upon Patil's allegedly

---

[11] Even the fourth claim for misappropriation of trade secrets, which ostensibly invokes only Patil's improper use of 10PM's "relationships", is still grounded upon Patil's improper transmission and/or monetization of Beauty ASMR to or from these "relationships."

17

improper transmission and/or monetization of Beauty ASMR using those "relationships."

Merely calling something a trade secret or unique or proprietary does not make it so. CUTSA requires that a plaintiff allege with a reasonable degree of specificity the pertinent "why" and the "how" to support. This is particularly true where, as here, even the "what" is hard to fathom. *See e.g.*, *Microvention, Inc. v. Balt USA, LLC*, 820CV02400JLSKES, 2023 WL 4316880, at *4 (C.D. Cal. May 3, 2023) ("The plaintiff must 'clearly define what it claims to own" and cannot "fall back on vague hand waving.'") Accordingly, Plaintiff's trade secret claim must be dismissed for failure to state a cognizable claim.

### 2. The remainder of the claims are preempted under CUTSA or the Copyright Act

In California, CUTSA "has been characterized as having a 'comprehensive structure and breadth.'" *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal.App.4th 939, 954 (2009). To this end, CUTSA specifically includes a provision concerning preemption. *Id.* at 954 (citing Cal. Civ. Code § 3426.7). Section 3426.7 expressly preempts all civil remedies based on trade secret misappropriation except contractual remedies. *Id.* Accordingly, Courts have held that preemption applies to claims for conversion, unjust enrichment, negligence, unfair competition both under common law and under the UCL, breach of confidence, fraud, and interference with contract. *See e.g.*, *Silvaco Data Systems v. Intel Corp.*, 184 Cal.App.4th 210, 236 (2010); *K.C. Multimedia*, *supra*, 171 Cal.App.4th at 960. Finally, and critically, because CUTSA "occupies the field," *id.*, California law does not recognize a property right in information that does not meet the statutory definition of a trade secret. *See e.g.*, *Silvaco*, *supra*, 184 Ca1.App.4th at 239, fn. 22; *Mattel, supra*, 782 F. Supp. 2d at 986-87.

Thus, to the extent the claims are based on defendants' unauthorized use of 10PM's alleged trade secrets or proprietary information, they are preempted by

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

CUTSA. Here, as discussed immediately hereinabove, **all nine** of 10PM's claims arise out of the same allegations that Patil, either individually or in consort with the other Defendants, misappropriated 10PM's "special relationships" at Snapchat and/or other social media companies or misappropriated Beauty ASMR, or both. Accordingly, the Complaint's eight ostensibly non-trade secret claims should be deemed preempted under CUTSA. And since, for the reasons discussed immediately hereinabove, Plaintiff's fourth cause of action for misappropriation of trade secrets should be dismissed for failing to satisfy the requirements of CUTSA, the same fate should also befall the Complaint's other eight claims. *Accord*, *Fred Hall*, *supra*, 2021 WL 3473562, at * 8 ("Fred Hall Shows argues that *K.C. Multimedia* is inapplicable here because the FAC is alleging both trade secret theft and confidential information misappropriation, and that 'thus there is a separate array of facts pertaining to the theft of confidential data which is not necessarily a trade secret, and vice versa.' [Citation.] The Court does not find Fred Hall Shows's opposition to be particularly responsive to Woods' argument. It is because Fred Hall Shows alleges both trade secret theft and misappropriation that Woods argue that CUTSA preempts the misappropriation claim. In short, Woods suggests (and the Court agrees) that when a claim is based on the same nucleus of facts as the misappropriation of trade secrets claim for relief, CUTSA will govern those claims.")

Similarly, but separately, to the extent 10PM's claims are based upon Defendants' allegedly unauthorized use of content supposedly owned or created by 10PM, they must be deemed preempted by the Copyright Act, 17 U.S.C. § 301. The Ninth Circuit has articulated a two-part test to determine whether a state law claim is preempted by copyright law. Under this test, the state law claim is preempted if (1) the content of the protected right falls within the subject matter of copyright, as described in 17 U.S.C § 102, and (2) the right asserted under state law is equivalent to the exclusive rights contained in section 106 of the Copyright Act. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001). Thus, "when a plaintiff's

19

claim relies solely on defendant's use of copyrighted material—that is, the reproduction, performance, distribution, or display of the work—the claim is preempted." *McCormick v. Sony Pictures Entertainment*, 2008 WL 11336160, at *9 (C.D. Cal. 2008).

Judge Andre Birotte, Jr.'s very recent copyright preemption reasoning, analysis, and holding in *LIVN Worldwide Ltd. v. Vubiquity Inc.*, No. 2:21-CV-09589-AB-KS, 2022 WL 18278580, at *4-5 (C.D. Cal. July 22, 2022), a highly analogous case involving alleged fraudulent use of television programming—akin to the social media programming at issue here—is directly on point. According to Plaintiff LIVN, it provided copies of its series "Marital Universe" (the "Series") to Defendant based upon Defendant's representation that it was going to use master copies of the Series only for due diligence and technical assessment. *Id.* at *4. However, Defendant proceeded to fraudulently, and without permission from Plaintiff, engage in far more substantial and unauthorized use and/or distribution of the Series for profit. *Id.* Plaintiff sued Defendant not only for copyright infringement, but also fraud and unfair competition. *Id.* at *1. Judge Birotte, however, granted Defendant's motion to dismiss, finding that Plaintiff had failed to state a claim for copyright infringement and that Plaintiff's fraud and unfair competition claims (which mimicked the fraud claim) were preempted by the Copyright Act and must be dismissed for the same reasons. *Id.* at *4-5. Judge Birotte explained:

> Plaintiff's fraud claim is grounded on Defendant's unauthorized use, reproduction and distribution of the Series. Plaintiff goes into detail about what Defendant did or did not do with the Series, however, its fraud claim is ultimately based on Defendant's use of the work and how the defendant chose to distribute it. Plaintiff's claim is equivalent to the exclusive rights contained in section 106 of the Copyright Act, thereby satisfying the second requirement of the two-part test. Additionally, although Plaintiff mentions in this claim that Defendant made misrepresentations about using the Series for mere technical assessment, the core of Plaintiff's fraud claim is based on the same allegations made in the copyright infringement claims: that Defendant reproduced, uploaded, and distributed the Martial Universe series without Plaintiff's authorization. . . . For these reasons, Plaintiff's

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

fraud claim, insofar as it may be adequately pled, is preempted by the Copyright Act

*Id.*

Judge Birotte's analysis with respect to LIVN's fraud and unfair competition claims applies with equal force to 10PM's fraud, unfair competition, usurpation of corporate opportunity, breach of fiduciary duty, conversion, and penal code violation (based on conversion) claims against Defendants in this case. Thus, to the extent all of these claims are based upon Defendants' alleged unauthorized use and distribution of Beauty ASMR, such claims should similarly be deemed by this Court to be preempted by the Copyright Act.

### 3. The Complaint fails to state any claims against the entity Defendants

Finally, even if the Complaint could be deemed to contain sufficiently specific allegations to ground the claims asserted against Patil, the third, fifth, sixth, and ninth claims should still be dismissed as alleged against Furor, Travly, and Crunch because the Complaint is utterly devoid of any specifics regarding these defendants' supposed misconduct. In this regard, the Ninth Circuit instructs:

> "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.' [Citation omitted.] In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." [Citation omitted.]).

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Applying this law to affirm the dismissal of deficiently pled claims against tag-on defendants in *Swartz*, the Ninth Circuit explained:

> With respect to Presidio and DB, the allegations in Swartz's original complaint patently fail to comply with Rule 9(b). The complaint is shot through with general allegations that the "defendants" engaged in fraudulent conduct but attributes specific misconduct only to

21

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

> KPMG and B & W. Conclusory allegations that Presidio and DB "knew that[KPMG and B & W] were making ... false statements to clients, including Swartz, and thus were acting in concert with [KPMG and B & W]" and "were acting as agents [of KPMG and B & W]" and were "active participants in the conspiracy" without any stated factual basis are insufficient as a matter of law.

*Id.* at 765; *see also*, *Fred Hall*, *supra*, 2021 WL 3473562, at *4 ("The Court finds that the balance of references to Woods involve references to 'Defendants' generally. These allegations, taken as a whole, are insufficient to meet the heightened pleading requirements of Rule 9(b). . . . The Court does not find that the allegations state "the who, what, when, where, and how" of the fraudulent conduct charged as it relates to Woods."). Here too, other than asserting that Patil owns or controls Furor, Travly, and Crunch, the Complaint is completely devoid of any facts tracing any misconduct specifically to these defendants. Accordingly, all claims as alleged against Furor, Travly, and Crunch, should be dismissed as a matter of law.

## C. <u>Leave to Amend Should Be Denied</u>

Defendants are certainly aware, as emphasized by this Court in its Civil Standing Order, of the liberal policy in this District and Circuit in favor of affording a pleading party an opportunity to amend its complaint. *See* Civil Standing Order § VIII(A) (citing *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) & *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Nevertheless, in light of 10PM's adamant stance against amendment and assertion that all necessary (and ostensibly available) facts grounding the claims against Defendants have already been set forth in the Complaint, it would appear that 10PM's claims here are not capable of being amended to comply with CUTSA and/or the Copyright Act. Indeed, it would seem impossible for 10PM's "relationships" or "processes" to ever qualify as actionable "trade secrets." Similarly, it would seem impossible for the Beauty ASMR channel to ever qualify as 10PM's protected material under the Copyright Act. And since the only purported misconduct 10PM alleges against Defendants' arises out of their alleged theft

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**

or misuse of these items, 10PM cannot state any claims against Defendants as a matter of law. Defendants thus submit that the Complaint should be dismissed without leave to amend.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay all proceedings in this case under the well-established first-to-file rule until the Indiana Action is determined, or, in the alternative, transfer this matter to the Northern District of Indiana so that it may be heard concurrently with the Indiana Action. If, however, the Court declines to stay or transfer this matter under the first-to-file rule, Defendants request that the Court proceed to dismiss the Complaint against all Defendants because it fails to state any cognizable claims against any of them.

Dated: July 5, 2023                          Respectfully submitted,

                                             witkow | baskin

                                             By: /s/Cory A. Baskin
                                                 Cory A. Baskin
                                             Attorneys for *Defendants*
                                             Mayur Deepak Patil, Furor Media LLC,
                                             Crunch Media, LLC, & Travly, Inc.

**MEMORANDUM IN SUPPORT OF MOTION TO STAY, TRANSFER, OR DISMISS**