

Cory A. Baskin (SBN 240517)
cb@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel: 818.296.9508

*Attorneys for Defendants*
Mayur Deepak Patil, Furor Media LLC,
Crunch Media, LLC, & Travly, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10PM CURFEW, LLC, a California Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> MAYUR DEEPAK PATIL; FUROR MEDIA, LLC, a Tennessee Limited Liability Company; CRUNCH MEDIA, LLC, a Tennessee Limited Liability Company; TRAVLY, INC, a Bahamas Corporation <br><br> Defendants. | Case No. 23-cv-02805-MEMF-MRW <br><br> *Assigned to the Hon. Maame Ewusi-Mensah Frimpong* <br><br> **DEFENDANTS' REPLY RE: MOTION TO STAY, OR IN THE ALTERNATIVE TRANSFER, OR IN THE ALTERNATIVE DISMISS COMPLAINT** <br><br> **Hearing** <br> Date: October 26, 2023 <br> Time: 10:00 a.m. <br> Place: Courtroom 8B (*Request for Zoom hearing anticipated to be filed by moving party) <br><br> Complaint Filed:   April 14, 2023 <br> Trial Date:      None Set |

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

## I.    INTRODUCTION

10PM's Opposition to Defendants' Motion fails to provide sufficient procedural, factual, or legal justification for the prosecution of this case in this Court. Accordingly, the Motion should be granted and this action either stayed in deference to the Indiana Action, transferred to Indiana to be heard (if at all) concurrently therewith, or dismissed for failure to state any claims against Defendants upon which relief can be granted.

## II.    THE ANTICIPATORY SUIT EXCEPTION IS INAPPLICABLE

Curiously, the authority cited by 10PM in the Opposition almost uniformly supports the stay, transfer, or dismissal of this case under the first-to-file rule, rather than supporting 10PM's arguments to the contrary. For example, the court in *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093 (N.D. Cal. 2006)—the primary case relied on by 10PM for the application of the anticipatory suit exception to the first-to-file rule—itself declined to apply the anticipatory suit exception to obviate the first-to-file rule. Instead, the court transferred the second-filed California suit to New Jersey where the first-filed suit was venued, holding that such transfer would "further the first-to-file rule's purpose of promoting efficiency and avoiding the duplication of litigation." *Id.* at 1102. In so doing, the court also noted that that the propriety of the California forum was dubious because—not unlike 10PM's assertions of its California citizenship in this case notwithstanding the dissolution of its California entity in favor of Panamanian operations—the plaintiff had sought to "gam[e] the venue question" via changes to the registration of its business. *Id.*

10PM also mischaracterizes its request that Defendants respond to its counsel's third letter by no later than February 13, 2023 as a statement of its intention to file suit imminently thereafter. Unlike in *Inherent.com*, 10PM did not state that it would file suit if a response was not received by February 13, 2023, nor did it even imply that any such suit would be filed in California. Instead, 10PM at most indicated that it would consider seeking injunctive relief (in an unspecified jurisdiction) if Defendants did not cease and desist their allegedly "unlawful behavior." (*See* RJN, Ex. 1 (Feb. 10, 2023 letter).) But

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

these threats to seek an "immediate court order" have definitively proven to be empty as more than five months have passed without 10PM applying for any injunction against Defendants in either the Indiana Action or this case. Moreover, the defendant in *Inherent.com* filed its "anticipatory" suit within five days of its receipt of the plaintiff's ***first*** demand letter, which timing tended to show a rush to the courthouse (albeit not enough to obviate the application of the first-to-file rule). Here, however, Defendants filed the Indiana Action after the exchange of ***three*** letters and passage of three weeks. Thus, it was certainly fair to interpret 10PM's letters not as threats of imminent suit, but rather as just 10PM "blowing smoke about a potential lawsuit." *See e.g.*, *Bryant v. Oxxford Exp., Inc.*, 181 F.Supp.2d 1045, 1048-49 (C.D. Cal. 2000) (declining to apply the anticipatory suit exception, explaining "[Oxxford's] letter, however, gave no indication that a lawsuit was imminent, or that [Oxxford] was doing anything more than blowing smoke about a potential lawsuit").[1]

10PM's allegation that Defendants' Motion mischaracterizes the record of 10PM's correspondence preceding the filing of the Indiana Action is baseless. Defendants specifically provided copies of this correspondence (which was attached to the Complaint in the Indiana Action) to the Court for its own review via the Request for Judicial Notice accompanying the Motion to ensure that the record was and is fully available for this Court's review. Such transparency was and is in stark contrast to 10PM's seemingly intentional efforts to conceal the pendency of the Indiana Action by not even referring to it in its Complaint in this action despite filing the Complaint two months after the Indiana Action and then failing to apprise the Court of the Indiana Action via Local Rule 83-1.4. The Opposition's revisionist characterization of 10PM's counsel's pre-suit correspondence is also directly belied by its counsel's admissions in

---

[1] Here again, 10PM's citation to *Bryant* in its Opposition is utterly confounding given that the case contradicts 10PM's position. This inapposite citation, and many other similarly curious citations in the Opposition, might explain why 10PM's counsel elected to submit the Opposition unsigned, rather than certifying its compliance with Rule 11.

his correspondence with Defendants' counsel in the wake of the filing of the Indiana Action in which he expressly disclaimed that the purpose of his prior letters was to threaten imminent suit. (*See* Reply Declaration of Anthony E. Dowell, Ex. 1.) Instead, 10PM's counsel proclaimed his purpose was "to see if we as counsel could try to get the parties to some sort of resolution without the need for lengthy and costly formal proceedings" and asked that Defendants "voluntarily dismiss [the Indiana Action] without prejudice so that we can discuss resolution in a manner that is professional and considerate." (*Id.*) 10PM cannot have it both ways—it cannot first admit to Defendants that its threats of suit were just a negotiating tactic, but now, to avoid the consequences of a failed bluff, assert that it nevertheless imminently intended to file suit.

Again, the Central District case with by far the most analogous first-to-file facts to those at bar is *Key Equip. Fin. v. Fed. Express Corp*, which was discussed at length in Defendants' Motion. *See also*, *Palantir Techs., Inc. v. Palantir.net, Inc*, 2007 WL 2900499, at *1 (N.D. Cal. Oct. 2, 2007) ("Palantir.net has not shown that it communicated to PTI that a lawsuit was 'imminent.' At most, Palantir.net threatened to 'take legal action to protect its interests' in the event an amicable resolution could not be reached.'. . . Here, unlike in *Sony*, ***Palantir.net did not even provide PTI with a draft complaint or threaten to file an infringement action by a certain date***. Therefore, Palantir.net fails to meet the first exception to the 'first-to-file' rule.") (Emphasis added). Thus, as in *Key*, the only remaining question for this Court should be whether to merely stay this case under the first-to-file rule, or, as in *Inherent.com*, transfer it the Northern District of Indiana pursuant to 28 U.S.C § 1404(a).

## III.   THE OPPOSITION FAILS TO ESTABLISH THAT ANY CLAIM FOR AGAINST DEFENDANTS IS SUFFICIENTLY PLED

Like its legally and factually inapposite first-to-file arguments, 10PM's trade secret analysis significantly misconstrues applicable law in a fashion that merely reinforces Defendants' arguments in the Motion. For example, 10PM cites *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327 (1990) for the proposition that,

under California law, "there need not be a confidential relationship between the holder of the trade secret and the person to whom it is disclosed to preserve the trade secret." Opp. at 5:16-17. 10PM's improper failure to include a pin cite for this "holding" is not surprising because the case makes no such holding. And even if it had so held, the *Balboa* court observes in a footnote that its holding is limited to alleged misappropriations that occurred before January 1, 1985, because thereafter California adopted CUTSA, which superseded common law. *Id.* at 1345, fn. 22.

Instead, the primary inquiry in *Balboa* was whether ***copyright law*** preempts unfair competition claims based on trade secret and breaches of confidence or fiduciary duty. *Id.* at 1339. The court found that the plaintiff had stated separate claims for breach of fiduciary duty and trade secrets that were not coextensive with copyright and allowed these claims to stand, while separately ruling that the misappropriation claims related to allegedly stolen software were in fact preempted by copyright. *Id.* at 1353. *Balboa* thus supports Defendants' argument in the Motion that, to the extent 10PM's claims are based upon the unauthorized use of Beauty ASMR, they too are preempted by copyright even though 10PM has not alleged—and cannot allege—a copyright infringement claim. Accordingly, 10PM's claims in this case must rise or fall exclusively upon whether 10PM has sufficiently alleged that its "relationships" with social media companies such as Snapchat are trade secrets.

In support of its argument that these "relationships" satisfy CUTSA's pleading standard, 10PM confoundingly relies on *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244 (1968), yet another state court case that predates CUTSA. Notably, this District has directly called into question the *Diodes* standard's continuing viability to federal pleading jurisprudence in light of the "significant developments in the law governing pleading standards that have occurred since 1968, including the seminal *Twombly* and *Iqbal* cases." *See Hiossen, Inc. v. Kim*, No. CV1601579SJOMRWX, 2016 WL 10987365, at *5 (C.D. Cal. Aug. 17, 2016). 10PM not only ignores this District's criticism of *Diodes*, but also, and even more crucially, completely fails to address Rule

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

9(b)'s heightened pleading standard, which necessarily applies to all of the Complaint's claims since each of them sound in fraud. *See e.g.*, Complaint, ¶¶ 45, 48, 50, 51, 52, 54, 71, & 77 (invoking the terms "fraud" or "fraudulent" and myriad other paragraphs using the terms "malice" or "malicious"); *accord*, *Talece Inc. v. Zheng Zhang*, 2020 WL 6205241, at *4 (N.D. Cal. Oct. 22, 2020) ("In addition to the blanket requirement that breach of fiduciary claims must be pled under Rule 9(b), the entire claim expressly relies on alleged fraudulent conduct. Plaintiff avers that Defendant acted with 'malice, oppression, and fraud' . . . intentionally misrepresented his duties and acted to the detriment of Plaintiff for his own benefit. By specifically alleging fraud and alleging facts that rely on fraudulent behavior, Plaintiff has averred fraud under the breach of fiduciary duty claim, and thus, this cause of action is subject to the heightened pleading standards of Rule 9(b).")

But, even if Rule 9(b)'s heightened pleading standard were not deemed applicable to Plaintiff's claims, and even if the "standard" set forth in *Diodes* was still the operative pleading standard for misappropriation of trade secrets claims alleged in federal court in this District after *Iqbal* and *Twombly*, 10PM still misstates and misapplies this standard in its Opposition. Specifically, 10PM selectively quotes from *Diodes* and similar cases for the proposition that a plaintiff "does not have to spell out the details" of its trade secrets in order to state a claim." In so doing, 10PM intentionally buries the lede by conveniently omitting the *Diodes* court's immediate clarification thereafter that "[t]he plaintiff must nevertheless allege the ultimate facts showing the existence of a trade secret or other confidential data to state such a cause of action" and admonition that "[a]n averment simply that the plaintiff has a 'secret process' is a bare legal conclusion." *Id.* The *Diodes* court thus held that the plaintiff's complaint, which "speaks in circumlocutions and innuendos" failed to state a claim because "[t]he subject matter of the so-called 'secret process' is not stated, except to hint that it had something to do with the manufacture of diodes." *Id.* at 251. Here too 10PM's Complaint speaks exclusively in circumlocutions and innuendos, suggesting only that its "relationships"

6

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

with social media companies such as Snapchat are trade secrets, even though these relationships were and are, by their very nature, publicized on social media. *See* Complaint, ¶ 20. 10PM further insists that Beauty ASMR was somehow a confidential business opportunity, even though the content itself was not in any way legally protectable and 10PM's intention all along was to publicize it via social media.

As explained by Central District Judge George H. Wu in *Balik v. Spiral Toys Inc.*, No. CV 15-8112-GW(PLAX), 2016 WL 7496134, (C.D. Cal. Feb. 1, 2016), such allegations fail to state any claim upon which relief can be granted as a matter of law. In *Balik*, the plaintiff alleged that defendant misappropriated his idea for a Bluetooth-enabled toy. *Id.* at *4. Judge Wu held otherwise, observing that this idea could not be a trade secret because the plaintiff's actions "clearly show[ed] that he did not intend to maintain his idea as a secret, nor did he take reasonable efforts to keep his idea a secret." *Id.* (observing that the plaintiff "admit[ted] that he disclosed his toy idea via PowerPoint slides 'to every major toy company and every major studio consumer products division.'"). As in *Balik*, 10PM's actions in this case show that it did not intend to maintain Beauty ASMR as a trade secret; rather its goal was just the opposite. Moreover, 10PM has not explained how or why its "relationships" with Snapchat and other social media companies were any different than those maintained by other social media channel operators skilled in the trade. Accordingly, 10PM's claims, as asserted, fail to state a claim as a matter of law.

Another Central District case, *Jun-En Enter. v. Lin*, No. CV 12-2734 PSG (SSX), 2013 WL 12126115 (C.D. Cal. June 17, 2013), is also directly on point and fatal to 10PM's assertions that its trade secrets are alleged with the requisite degree of specificity (even under the lesser Rule 8 standards). The plaintiffs in *Ju-En* were Taiwanese corporations who manufacture and sell metal products and machinery internationally, and particularly, in California. The plaintiffs engaged defendant Peter Lin ("Lin") to market and sell their products. The plaintiffs alleged that Lin diverted their customers to competitor businesses, including Lin's own business, which they

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

allege was created to appear to be associated with the plaintiffs' business. *Id*. at *1. In their first amended complaint ("FAC"), as in their original complaint, the plaintiffs generally alleged that "Defendant Lin utilized his position as agent for Plaintiffs [] to acquire proprietary information regarding potential customers and business leads that derived independent economic value from not being generally known to the public, or to other persons who could obtain economic advantage from its disclosure, and as to which Plaintiffs made reasonable efforts to maintain secrecy." *Id.* at *2.

After having already once afforded the plaintiffs leave to amend in an effort to add specificity to their claims, Judge Philip S. Gutierrez again held that the allegations in the FAC failed for lack of specificity. Judge Gutierrez explained: "Here, merely pleading that the proprietary information relates to potential customers and business leads is insufficient. The SAC does not explain ***why*** the vague category of information regarding potential customers and business leads was proprietary information." *Id.* at *2 (emphasis added) (citing and quoting *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 2228936, at *14 (N.D. Cal. June 1, 2010) (finding that an employer's claim that a former employee misappropriated "business models and implementations" did not "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade," nor did it "permit the defendant to ascertain at least the boundaries within which the secret lies.")). Judge Gutierrez also found that the plaintiffs' claims for unfair competition, breach of duty of loyalty, unfair business practices, and tortious interference were based upon the same nucleus of facts as their trade secrets claim because, in essence, they alleged that "Defendants used proprietary information . . . to divert customers away from Plaintiffs." *Id.* at *4. Judge Gutierrez observed "it is unclear how misappropriating information regarding potential customers and business leads arises from a different nucleus of facts than diverting business to competing companies." *Id.* at *3. Finally, Judge Gutierrez explained that dismissal based upon CUTSA preemption was proper even "where a cause of action is superseded

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

witkow | baskin

*in part* by CUTSA at the pleading stage." *Id.* (emphasis added) (citing numerous cases).

Here, as in *Ju-En*, 10PM baldly alleges *that* its relationships with social media companies were proprietary; but it does not explain *why* these relationships are any different than relationships maintained by other similarly situated content purveyors with these same individuals at these same social media companies.[2] To the contrary, 10PM without support, explanation, or details labels these relationships as "protected, proprietary, and trade secret information." Complaint ¶ 20; *contra*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citations omitted). And even if these supposed relationships could qualify as trade secrets, the Complaint is devoid of any factual allegations regarding their independent economic value or efforts to maintain their secrecy. *See e.g.*, *Green Crush LLC v. Paradise Splash I, Inc.*, No. SACV1701856CJCJDEX, 2018 WL 4940825, at *7 (C.D. Cal. May 3, 2018) (dismissing claim for misappropriation of trade secrets even though plaintiff provided sufficient detail regarding the identity of the trade secret because plaintiff failed to include factual allegations regarding the independent economic value of those trade secrets or plaintiff's efforts to maintain secrecy). Tellingly, 10PM does not allege that Patil or Furor were required to sign any sort of non-disclosure or confidentiality agreement prior to being provided access to these relationships or were ever told by 10PM that such relationships were confidential, proprietary, and/or a trade secret that was not to be disclosed outside of Defendants' arrangements with Plaintiffs.[3]

---

[2] In fact, 10PM specifically admits that at least fifty other Snapchat publishing partners have identical relationships. *See* Complaint, ¶¶ 30-33.

[3] 10PM's invocation of *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 510 (2013) as a last gasp effort to avoid preemption is unavailing. (*See* Opposition at 11:12-

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

Finally, as in *Ju-En*, the gravamen of 10PM's eight ostensibly non-trade secret claims is that Defendants "used proprietary information . . . to divert customers away from Plaintiffs." *Ju-En*, *supra*, 2013 WL 12126115, at *4. 10PM's examples of supposed distinguishing factors among its claims are circular and unintelligible. (*See* Opposition at 11:17-12:5.) Accordingly, as in *Ju-En*, these claims must be deemed preempted on the "facts" alleged.

## IV.    CONCLUSION

For the foregoing reasons, and those previously set forth in Defendants' Motion, Defendants respectfully request that this Court stay all proceedings in this case under the well-established first-to-file rule until the Indiana Action is determined, or, in the alternative, transfer this matter to the Northern District of Indiana so that it may be heard concurrently with the Indiana Action. If, however, the Court declines to stay or transfer this matter under the first-to-file rule, Defendants request that the Court proceed to dismiss the Complaint against all Defendants because it fails to state any cognizable claims against any of them.

And because 10PM has failed to even attempt to explain in the Opposition how the Complaint could conceivably be amended to state any viable claims without the same fatal defects, Defendants submit that the Complaint should be dismissed without leave to amend. *See Balik*, *supra*, 2016 WL 7496134, at *4 (dismissing misappropriation of trade secrets claim without leave to amend); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (concluding that amendment would be futile where plaintiffs already filed an amended complaint containing the same defects as their original complaint and failed to state what additional facts they would plead if given leave to amend, or what additional discovery they would conduct to discover such facts).

16 & 12:6-7.) The claims held not to be preempted in *Angelica* were expressly based upon the defendant's alleged violation of a non-competition agreement. *Id.* at 508. No such contract claims are at issue in this case.

10

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**

Dated: July 19, 2023

Respectfully submitted,

witkow | baskin

By: /s/Cory A. Baskin

Cory A. Baskin

Attorney for *Defendants*
Mayur Deepak Patil, Furor Media LLC,
Crunch Media, LLC, & Travly, Inc.

**DEFENDANTS' REPLY RE MOTION TO STAY, TRANSFER, OR DISMISS**